UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-80744-STRAUSS

ALICIA MARIE GAUGLIONE,

   Plaintiff,

v.

MARTIN O'MALLEY,
Commissioner of Social Security,

   Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

  THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment/Initial Brief ("Plaintiff's Motion") [DE 16] and Defendant's Cross-Motion for Summary Judgment/Answer Brief ("Defendant's Motion") [DE 19]. The Court has reviewed both motions, Plaintiff's Reply [DE 20], the administrative record [DE 6], and all other filings in this case. For the reasons discussed herein, Plaintiff's Motion [DE 16] will be **DENIED** and Defendant's Motion [DE 19] will be **GRANTED**.

## I.  BACKGROUND & PROCEDURAL HISTORY

  Plaintiff applied for disability insurance benefits on February 7, 2021, alleging a disability onset date of August 2, 2020 ("Alleged Onset Date"). Tr. 17, 68-69, 75, 194-98. Plaintiff, who was born in 1974, was 46 years old when she submitted her application for disability insurance benefits. Her claim for benefits was denied initially and upon reconsideration. Tr. 17, 63-96. Thereafter, Plaintiff appeared with counsel at a telephonic hearing before an Administrative Law Judge ("ALJ") on January 4, 2023; a vocational expert ("VE") also appeared and testified at the hearing. Tr. 37-62. On January 23, 2023, the ALJ issued her decision, finding that Plaintiff was

not disabled under the Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision).  Tr. 17-31.  On March 27, 2023, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner.  Tr. 1-3.  Consequently, on May 5, 2023, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.   <u>DISCUSSION</u>

**A.  THE SEQUENTIAL EVALUATION**

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. § 404.1520.  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See id.*

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  If so, the ALJ will

find the claimant disabled without considering age, education, and work experience.  *Id.*  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

**B.  ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION**

After considering the evidence, the ALJ found that Plaintiff was not disabled between the Alleged Onset Date and the date of the ALJ's decision.  *See* Tr. 17-31.  Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation.  Tr. 17-19.  Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had

not engaged in substantial gainful activity since the Alleged Onset Date.  Tr. 19.  Next, at step two,

the ALJ found that Plaintiff had "the following combination of severe impairments: Degenerative

Changes of the Cervical Spine, Major Depressive Disorder, and Post-Traumatic Stress Disorder."

Tr. 19.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of any of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 20.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the

entire record that Plaintiff has the RFC

> to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or
> walk 6 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday,
> frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and
> occasionally climb ladders, ropes and scaffolds. [Plaintiff] is able to concentrate
> and persist for simple tasks.

Tr. 23.  As part of this assessment, the ALJ noted that, in accordance with 20 C.F.R. § 404.1529

and SSR 16-3p, she considered all of Plaintiff's symptoms and the extent to which her symptoms

could reasonably be accepted as consistent with the objective medical evidence and other evidence.

Tr. 23.  Additionally, the ALJ stated that she considered the medical opinion evidence and prior

administrative medical findings in accordance with 20 C.F.R. § 404.1520c.  Tr. 23.  She then

proceeded to discuss the evidence of record in conjunction with discussing Plaintiff's RFC.  Tr.

23-29.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff is unable to perform her past

relevant work.  Tr. 29.  Therefore, the ALJ considered Plaintiff's age, education, work experience,

and RFC to determine whether a significant number of jobs, that Plaintiff could perform, exist in

the national economy.  Tr. 29-31.  Relying on the VE's testimony, the ALJ determined that Plaintiff

is able to perform three unskilled, medium exertion occupations: (1) Linen Room Attendant; (2)

Cleaner, Hospital; and (3) Marker, Laundry.  Tr. 30.  Additionally, the ALJ determined – also based on the VE's testimony – that even if Plaintiff's RFC was reduced to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently (a reduction that would bring Plaintiff down to jobs at the light exertion level), Plaintiff would still be able to perform the following three unskilled, light exertion jobs: (1) Garment Sorter; (2) Folder; and (3) Mail Clerk.  Tr. 31.  As a result, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work existing in significant numbers in the national economy.  Tr. 31.  In light of this conclusion, the ALJ found that Plaintiff was not disabled.  Tr. 31.

### C. ANALYSIS

Plaintiff raises several contentions of error.  First, Plaintiff contends that the ALJ erred in evaluating the medical opinions of Dr. Anthony Tereo and Dr. David Appel.  However, for the reasons discussed in Section 1 below, even if the Court were to find that the ALJ did not evaluate Dr. Tereo's statements in accordance with the regulation governing the evaluation of medical opinions (20 C.F.R. § 404.1520c), the ALJ would not have erred (or at least not committed harmful error).  That is because at least certain – if not all – of Dr. Tereo's statements were not "medical opinions" as defined under the regulations.  Meanwhile others addressed issues reserved to the Commissioner and, in the ALJ's reasonable view, only addressed Plaintiff's ability to perform her past relevant work, which the ALJ found Plaintiff did not have the ability to do at any rate.  As to Dr. Appel, as discussed in Section 2 below, the ALJ evaluated his medical opinions under the applicable regulation and her evaluation is supported by substantial evidence.

Second, Plaintiff contends that the ALJ erred in evaluating certain evidence regarding Plaintiff's physical limitations.  As discussed in Section 3 below, Plaintiff has failed to demonstrate

reversible error.  Third, Plaintiff contends that the ALJ erred in evaluating Plaintiff's symptoms. As discussed in Section 4 below, the Court disagrees.

Finally, Plaintiff contends that the ALJ erred by relying on the VE's testimony.  According to Plaintiff, the VE's testimony did not constitute substantial evidence because the ALJ's hypothetical to the VE did not include all of Plaintiff's limitations.  In this regard, the Eleventh Circuit has explained that "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson*, 284 F.3d at 1227); *see also Walker*, 2022 WL 1022730, at *3 ("In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. However, the ALJ is not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported. In other words, the hypothetical question need not list every symptom but must provide the VE with a complete picture of the claimant's RFC." (internal quotation marks and citations omitted)).  Here, it is evident that the ALJ's hypothetical to the VE included all of the limitations that the ALJ ultimately found to exist in Plaintiff's RFC.  *Compare* Tr. 23, *with* Tr. 58.[1]  Therefore, the ALJ properly relied on the VE's testimony.

---

[1] Plaintiff's argument that the ALJ's hypothetical to the VE failed to account for all of Plaintiff's limitations is based on the other arguments that Plaintiff makes in her motion.  In other words, Plaintiff takes issue with the ALJ's RFC determination for the reasons discussed in Sections 1-4 below.  Because Plaintiff's arguments – those discussed in Sections 1-4 below – fail, and because the ALJ's hypothetical to the VE included all limitations the ALJ found Plaintiff to have (with the ALJ only excluding findings from the hypothetical that the ALJ properly rejected as unsupported), Plaintiff's argument regarding the ALJ's reliance on the VE's testimony fails.

1. **Dr. Tereo**

The ALJ did not err in her evaluation of Dr. Tereo's alleged medical opinions.  The record contains four letters from Dr. Tereo – letters dated September 30, 2020, January 20, 2021, April 14, 2021, and October 20, 2021 – that are at issue.  Tr. 340, 344-46.  The first letter (from September 2020, addressed to the CFO of United Savings Bank) states that Plaintiff was being treated by Dr. Tereo for PTSD and that her condition rendered her "unable to perform her work-related duties at this time."  Tr. 345.  The letter noted that "[t]his will be reviewed again in sixty days."  Tr. 345.  Similarly, the second letter (from January 2021, also addressed to the bank CFO) stated that Plaintiff "continues to be unable to perform her work-related duties at the current time" and "will be re-evaluated in sixty days."  Tr. 346.  In his third letter (from April 2021, addressed to the Bureau of Disability Determination), Dr. Tereo, stated, *inter alia*, that the loss of Plaintiff's son "exacerbated" her conditions, and that Plaintiff's symptoms "are beyond normal grieving, and her suicidal ideation places her in an at-risk population."  Tr. 340.  Finally, Dr. Tereo's October 2021 letter indicates, *inter alia*, that Plaintiff's PTSD "devolved into a Major Depressive Disorder," that Plaintiff's depression "significantly impacted her day-to-day functioning," and that Plaintiff "has difficulty with concentration, completing tasks and falling and staying asleep."  Tr. 344.

After discussing the content of Dr. Tereo's four letters, the ALJ stated that she found Dr. Tereo's opinions to be unpersuasive.  Tr. 25-26.  The ALJ explained:

> First and foremost, the undersigned notes that Dr. Tereo's statements on September 30, 2020 and January 20, 2021 seemingly relate to [Plaintiff's] inability to engage in past work activity. (See Exhibit 7F, Pages 2-3). Dr. Tereo's opinion regarding [Plaintiff's] inability to perform her past work is actually consistent with the conclusions reached in this decision. As for Dr. Tereo's additional statements, the undersigned finds they are vague as he fails to provide a function-by-function assessment of [Plaintiff's] mental capabilities. As discussed throughout this Decision, [Plaintiff's] records do support a finding that [Plaintiff] endures certain

limitations. However, the [RFC] indicated provides the most accurate assessment of [Plaintiff's] mental capabilities based on the totality of the evidence and the objective findings contained therein.

Tr. 26.

Plaintiff contends that the ALJ erred in evaluating Dr. Tereo's opinions because his opinions find support in the record and because the ALJ cannot discount medical opinions solely based on the form in which they were rendered. *See* [DE 16] at 14. However, the ALJ did not err.

First, Plaintiff has failed to show that the ALJ was unreasonable in concluding that Dr. Tereo's first two letters pertained to Plaintiff's inability to perform her *past work* (as opposed to any work). The letters were apparently directed at her then-employer and appeared to address her "work-related duties" in that particular job.[2]  In other words, the ALJ's characterization of Dr. Tereo's statements regarding Plaintiff's ability to work was both rational and reasonable. Therefore, it is not this Court's place to second-guess the ALJ's characterization. Additionally, Dr. Tereo did not opine that Plaintiff's condition would likely prevent her from working for at least 12 months[3] – only that she could not "perform her work-related duties" at "this time" or "the current time" and that she would be evaluated again in 60 days.

Second, the ALJ found that Dr. Tereo's subsequent letters contained vague statements that failed to include any function-by-function assessment of Plaintiff's mental capabilities. As Defendant argues, the fact that Dr. Tereo did not address Plaintiff's ability to perform any particular function(s) means that Dr. Tereo did not actually provide a "medical opinion" (as

---

[2] The ALJ even noted that Dr. Tereo's opinion regarding Plaintiff's inability to perform her past work was actually consistent with the ALJ's conclusions.

[3] As noted above, a "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which *has lasted or can be expected to last for a continuous period of not less than twelve months*." 42 U.S.C. § 1382c(a)(3)(A) (emphasis added).

defined under the regulations).  "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) *and* whether you have one or more impairment-related limitations or restrictions in the abilities" to perform various demands of work activities. 20 C.F.R. § 416.913(a)(2) (emphasis added); *see also Staheli v. Comm'r, SSA*, 84 F.4th 901, 906 n.2 (10th Cir. 2023) (recognizing that for a statement from a medical source to qualify as a "medical opinion," it must address "*both* what the claimant can still do despite her impairment(s) *and* whether she has one or more impairment-related limitations or restrictions in specified abilities" (cleaned up)).  Such demands include mental demands of work activities, "such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. § 416.913(a)(2)(i)(B); *see also Gregory v. Comm'r, Soc. Sec. Admin.*, No. 21-14103, 2023 WL 4542674, at *8 n.9 (11th Cir. July 14, 2023).  "Mere diagnostic statements or 'judgments about the nature and severity of . . . impairments' are not 'medical opinions.'"  *Austin v. Kijakazi*, 52 F.4th 723, 729 n.3 (8th Cir. 2022).

Here, although Dr. Tereo noted that Plaintiff had difficulty with concentration, completing tasks, and sleeping, he did not address what Plaintiff could still do despite her impairments or the extent to which she was limited in any specified abilities.  Nor did he address Plaintiff's ability to perform any specific functions in the work setting.  *Cf. Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) ("None of the statements in Downey's letter assess the extent to which Dye can perform any particular function in a work setting, and so they do not constitute 'medical opinions' for purposes of the applicable regulatory regime.").  Rather, Dr. Tereo merely included several generalized – and arguably vague (as the ALJ described them) – statements without providing the substance necessary for his statements to

qualify as "medical opinions" under the regulations. Therefore, Plaintiff has not shown that the ALJ was required to provide any further discussion of Dr. Tereo's statements. Moreover, contrary to Plaintiff's argument, the ALJ did not discount Dr. Tereo's statements solely based on the form in which they were rendered but rather based on their substance (or lack thereof).

Furthermore, even if Dr. Tereo's statements regarding Plaintiff's ability to work could technically qualify as a "medical opinions," the ALJ did not err in finding them unpersuasive. That is because statements that a claimant is not "able to work" or that her RFC prevents her "from doing past relevant work" are "[s]tatements on issues reserved to the Commissioner," which are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i), (vi); *see also Glasby v. Soc. Sec. Admin., Comm'r*, No. 21-12093, 2022 WL 1214015, at *2 (11th Cir. Apr. 25, 2022). Therefore, the ALJ was "specifically relieved from providing any analysis about how such evidence was considered." *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *2 (5th Cir. Jan. 18, 2023) (citing 20 C.F.R. § 404.1520b(c)).

For the foregoing reasons, the ALJ did not err in evaluating Dr. Tereo's statements.

**2. Dr. Appel**

The ALJ did not err in evaluating Dr. Appel's opinion. Unlike Dr. Tereo, Dr. Appel did provide a "medical opinion." Therefore, the ALJ was required to evaluate his opinion in accordance with 20 C.F.R. § 404.1520c (which applies to medical opinions for claims filed after March 27, 2017). Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting that the requirement to assign weight to medical opinions has been omitted from the revised regulation). Rather, the ALJ must evaluate the

persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(a). Although an ALJ is no longer required to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. § 404.1527 – the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be. 20 C.F.R. § 404.1520c(b).

Nonetheless, § 404.1520c makes clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding. 20 C.F.R. § 404.1520c(b)(1). In doing so, the ALJ must explain how he or she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how he or she considered the other three factors. 20 C.F.R. § 404.1520c(b)(2)-(3). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20

C.F.R. § 404.1520c(c)(2).

Here, Dr. Appel completed a Mental Residual Functional Capacity Assessment.  Tr. 367-

70.  Therein, Dr. Appel opined that Plaintiff has "extreme" limitations in the area of understanding

and memory and in the area of sustained concentration and persistence.  Tr. 368-69.  Dr. Appel

also opined that Plaintiff has mostly "extreme" limitations – and a few "marked" limitations – in

the areas of social interaction and adaptation.  Tr. 369-70.  Additionally, Dr. Appel stated, *inter*

*alia*, that he does not believe Plaintiff "is able to work at all," that her capacity to "leave the house

without being triggered to the point of being dysfunctional is limited," that he did not see how she

would be able to regularly show up for work or manage simple tasks, that her capacity to focus is

significantly limited, and that her capacity to handle basic stressors is insufficient.  Tr. 370.

According to Dr. Appel, Plaintiff's impairment would substantially interfere with her ability to

work on a regular and sustained basis at least 20% of the time.  Tr. 370.

After summarizing the opinions Dr. Appel provided in his assessment, the ALJ explained

that she found his opinions to be unpersuasive because "they are unsupported by and inconsistent

with the medical record as a whole."  Tr. 26.  According to the ALJ, "[b]ased on the totality of the

evidence . . . there are specific and legitimate reasons to reject Dr. Appel's unreasonably restrictive

assessment.  The totality of the medical records simply fails to support Dr. Appel's opinions . . . ."

Tr. 26.  The ALJ explained:

> As discussed, [Plaintiff's] records do indicate she endures certain mental
> limitations; however, the undersigned finds Dr. Appel's opinions overstate her
> limitations and are not supported by the longitudinal medical evidence of record.
> In so finding, the undersigned reiterates that Dr. Appel's treatment records from
> March 16, 2022 through September 7, 2022 indicate his own mental status
> examinations of [Plaintiff] consistently resulted in generally unremarkable
> findings. (See Exhibit 14F, Pages 13-14, 29-30, 45-46, 61-62, 77-78, 94-95, and
> 111-112). The discrepancy between Dr. Appel's opinions and his own objective

findings renders his opinions less persuasive. In addition, while Dr. Appel noted extreme limitations in essentially all areas of functioning, which would indicate hospitalization or institutionalization, the medical evidence of record shows [Plaintiff] has never been hospitalized. Again, Dr. Appel's opinions are not supported by the longitudinal medical evidence of record.

. . .

Overall, it is evident Dr. Appel relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff]. He also seems to have uncritically accepted as true most, if not all, of what [Plaintiff] reported. Yet, as explained throughout this decision, there exist good reasons for questioning the reliability of [Plaintiff's] subjective complaints. Specifically, there is insufficient medical evidence to corroborate [Plaintiff's] assertions regarding the extent of her alleged limitations.

Tr. 26-27.

As the foregoing discussion shows, the ALJ evaluated both the consistency and supportability of Dr. Appel's opinion in connection with evaluating its persuasiveness. Thus, as an initial matter, the ALJ conducted the evaluation mandated under § 404.1520c for medical opinions.

Nevertheless, Plaintiff argues that the ALJ erred in a few ways. First, Plaintiff notes in passing that Dr. Appel's opinion is consistent with Dr. Tereo's opinion. However, as discussed in the preceding section, the ALJ did not err with respect to her treatment of Dr. Tereo's statements. Moreover, the ALJ's discussion of the evidence shows she reasonably found the other evidence of record to be largely inconsistent with Dr. Appel's opinions. For instance, earlier in her decision,[4] the ALJ explained how Dr. Byron Pack and Dr. Barbara Lewis found no more than "mild" or "moderate" limitations in the functional areas where Dr. Appel found mostly "extreme" limitations. *See* Tr. 22. And after discussing Dr. Appel's opinions, the ALJ further elaborated on

---

[4] Significantly, the Eleventh Circuit and other circuits have explained that "it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024) (citations omitted).

the persuasiveness of Dr. Lewis's opinions – which are clearly inconsistent with Dr. Appel's

opinions – stating as follows:

> There are very few objective medical findings that would support a finding of
> disability premised on [Plaintiff's] mental impairments. Dr. Barbara Lewis, a State
> agency psychological consultant, completed a mental [RFC] assessment of
> [Plaintiff] and opined that [Plaintiff's] mental functioning did not prevent her from
> performing all work activity. It was her opinion that [Plaintiff] was capable of
> maintaining sufficient concentration for tasks. According to Dr. Lewis, [Plaintiff]
> was able to "understand, retain, and carry out simple instructions", "perform routine
> tasks on a sustained basis", and "adapt over time to most changes and task
> demands". Ultimately, Dr. Lewis determined that while [Plaintiff] "does suffer
> from some degree of limitation from mental health issues, the symptom severity
> noted would not preclude the completion of simple tasks." (Exhibit 6A, Page 7).
> To the extent consistent with the [RFC] indicated, the undersigned finds the
> opinions of Dr. Lewis persuasive as they are supported by the objective medical
> findings and the other substantial evidence of record.

Tr. 27.

In her decision, the ALJ also discussed a psychological consultative examination

performed by Dr. Luis Zaldivar, noting that notwithstanding Plaintiff's complaints, she "was alert,

attentive, and cooperative" and able "to put her thoughts together and provide a background

history." Tr. 24. Additionally, notwithstanding Plaintiff's complaints of a lack of motivation and

being sad and teary, Dr. Zaldivar indicated that Plaintiff could communicate "in full sentences,

relate stories, and sustain a conversation." Tr. 24. The ALJ also noted that Dr. Zaldivar reported

Plaintiff "remained 'oriented in all spheres,' possessed 'adequate' memory," and was able to add

and subtract (albeit not multiply). Tr. 24. Moreover, the ALJ discussed Dr. Zaldivar's notation

that Plaintiff was able to get "along with people, hold simple conversations with acquaintances,

and behave in a socially appropriate manner." Tr. 24. Ultimately, with one limited exception, the

ALJ found that Dr. Zaldivar's examination and report were generally supportive of the RFC the

ALJ assessed. Tr. 24.

The ALJ likewise discussed and relied on Dr. Jonathan Black's psychological consultative examination.  The ALJ summarized Dr. Black's examination, in part, as follows:

> According to Dr. Jonathan Black, while the claimant did exhibit "some difficulty maintaining her attention", she "demonstrated fair task persistence" and remained "oriented to person, place, time, and situation". (Exhibit 9F, Pages 2 and 3). The claimant also exhibited "fair abilities of abstraction", a "fair fund of information", and the ability "to perform simple arithmetic calculations". At this time, the claimant also possessed "fair" insight and judgment while reporting she "manages her own finances". (Exhibit 9F, Page 3).

Tr. 25.  And the ALJ concluded that Dr. Black's objective medical findings supported the ALJ's RFC determination.  Tr. 25.

Notably, Plaintiff has not argued that the ALJ erred in finding the bulk of the evidence to be inconsistent with Dr. Appel's opinions.  Moreover, my own review indicates that the ALJ reasonably found Dr. Appel's opinions (that Plaintiff suffers from mostly "extreme" mental limitations) to be largely inconsistent with the medical evidence of record regarding Plaintiff's mental limitations (*e.g.*, evidence from Dr. Pack, Dr. Lewis, Dr. Zaldivar, and Dr. Black).  Thus, the ALJ's consistency determination regarding Dr. Appel's opinions is supported by substantial evidence.

Plaintiff's arguments regarding the ALJ's treatment of Dr. Appel's opinions seem to implicate the supportability factor more than the consistency factor.  However, the ALJ's supportability determination as to Dr. Appel is also supported by substantial evidence.

As to supportability, Plaintiff takes issue with three specific statements the ALJ made regarding Dr. Appel, *see* [DE 16] at 15-17: (1) "Dr. Appel's treatment records . . . indicate his own mental status examinations of [Plaintiff] consistently resulted in generally unremarkable findings"; (2) "while Dr. Appel noted extreme limitations in essentially all areas of functioning, which would indicate hospitalization or institutionalization, the medical evidence of record shows [Plaintiff] has

never been hospitalized"; and (3) "Overall, it is evident Dr. Appel relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff]."

In connection with evaluating the foregoing statements (particularly the first and third), it is necessary to examine Dr. Appel's treatment records. *See* Tr. 371-489. As reflected therein, Dr. Appel appears to have met with Plaintiff seven times between March 2022 and September 2022. His records begin by summarizing information that appears to have been provided by Plaintiff – in an HPI section and a past psychiatric history section, among other sections. *See, e.g.*, Tr. 376-79. Thereafter, Dr. Appel addresses Plaintiff's appearance and behavior/psychomotor, as well as the results of a mental status exam he performed during each appointment. With respect to Plaintiff's appearance, Dr. Appel noted (for all seven appointments) that Plaintiff was "healthy, well-groomed, [and] well-dressed." Tr. 382, 399, 415, 431, 447, 464, 481. And he noted, with respect to behavior (for all seven appointments), that Plaintiff was "cooperative with good grooming and eye contact." Tr. 383, 399, 415, 431, 447, 464, 481.

The results of Plaintiff's mental status exams were also the same for all seven appointments, with the exception of Dr. Appel's notations regarding Plaintiff's "mood and affect." Specifically, in the mental status exam section of his reports for all seven appointments, Dr. Appel reported the following (putting aside for a moment "mood and affect"): (1) speech – "regular rate, rhythm and volume; (2) thought processes and content – "appropriate, logical"; (3) associations – "linear and goal directed"; (4) abnormal or psychotic thoughts – "no S/HI, A/VH, IOR, RIS or psychotic symptoms"; (5) judgment and insight – "fair"; (6) orientation – "alert, oriented to person, place, time and situation"; (7) recent and remote memory – "intact"; (8) attention/concentration – "alert, pays attention"; (9) language – "articulate, coherent"; and (10) fund of knowledge – "age appropriate." Tr. 383-84, 399-400, 415-16, 431-32, 447-48, 464-65, 481-82. As to "mood and

17

affect," Dr. Appel noted as follows for each session: (1) March – "dythymic, ok, constricted" (Tr. 383); (2) April – "dythymic, ok, constricted, tearful at times" (Tr. 399); (3) May – "dythymic, ok, constricted, appropriately tearful at times" (Tr. 415); (4) June – "dythymic, 'sad,' constricted, appropriately tearful at times" (Tr. 431); (5) July – "dythymic, 'sad,' constricted, appropriately tearful at times" (Tr. 447); (6) August – "dythymic, 'sad,' constricted, appropriately tearful at times" (Tr. 464); and (7) September – "ok euthymic, fairly broad" (Tr. 481).

Plaintiff first argues that the ALJ erred in characterizing the findings from Dr. Appel's mental status exams as "generally unremarkable findings."   According to Plaintiff, by characterizing the findings in this manner, the ALJ improperly focused on findings supporting her conclusion, omitted consideration of findings to the contrary, and improperly substituted her lay opinion for the opinion of a medical expert.  The Court disagrees.  The ALJ made clear that she reviewed all of Dr. Appel's mental status exams, *see* Tr. 25, 26, and as the preceding paragraph shows, the ALJ's conclusion that the findings were *generally* unremarkable is both reasonable and rational.  In fact, of the 11 categories evaluated as part of the mental status exams, only 1 category (mood/affect) would not be "unremarkable."  But the findings for the other 10 categories were unremarkable and reasonably support the ALJ's conclusion that Dr. Appel's mental status exam observations do not support his opinion of "extreme" limitations.[5]

---

[5] Plaintiff also indicates in her motion that "fair" judgment/insight is not "unremarkable." However, the ALJ specifically noted Dr. Appel's finding that Plaintiff had fair judgment and insight.  Tr. 25.  And even if fair judgment and insight could not be considered "unremarkable," 9 of 11 categories were still clearly unremarkable.  Moreover, the question is whether Dr. Appel's consistent observations of "fair" judgment (along with his other observations) support his assessment of "extreme" mental limitations.  Dr. Appel did not find that judgment and insight were "poor."  Yet, he still assessed mostly "extreme" mental limitations.  The bottom line though is, as stated above, the ALJ reasonably and rationally found that Dr. Appel's mental status exams revealed generally unremarkable findings.  Thus, the ALJ reasonably found that the mental status exam findings did not support Dr. Appel's opinions.

Nor does the ALJ's observation that Dr. Appel appeared to rely heavily on Plaintiff's subjective complaints undermine the ALJ's decision.  It is true, as Plaintiff contends, that mental health professionals may take into account a plaintiff's subjective complaints and that it is improper to find a psychiatrist's medical opinion unpersuasive solely because he offers an opinion that takes into account such complaints.  The problem here though is that is difficult to conclude how and why Dr. Appel found such extreme limitations, unless, as the ALJ concluded, Dr. Appel "seems to have uncritically accepted as true most, if not all, of what [Plaintiff] reported." Tr. 27. That is because Dr. Appel's treatment records are primarily comprised of Plaintiff's reports and the results of Plaintiff's mental status exams (which the ALJ reasonably found were *generally* unremarkable).  Thus, without further explanation from Dr. Appel to support his opinions, it is difficult to see how Dr. Appel's opinions are supported by anything other than virtually wholesale reliance on Plaintiff's subjective complaints, particularly when his mental status exams substantially conflict with those complaints.  Regardless, the ALJ did not discount Dr. Appel's opinions solely because he relied on Plaintiff's subjective complaints.[6]

Regarding the ALJ's observation that Dr. Appel's assessment of mostly extreme limitations "would indicate hospitalization or institutionalization," but that the evidence does not show Plaintiff has ever been hospitalized, it is unclear without further explanation from the ALJ

---

[6] In support of her argument regarding Dr. Appel's reliance or lack thereof on Plaintiff's subjective complaints, Plaintiff contends that Dr. Appel's treatment records "are replete *with his own observations*, including uncontrollable crying, depressed mood, and constricted affect, which support a determination that he did not exclusively rely upon [Plaintiff's] self-report of symptoms in assessing the marked to extreme limitations." [DE 16] at 17 (citing Tr. 383, 415, 431).  Based on the citations Plaintiff provides, Plaintiff is evidently pointing to the mood/affect section of Dr. Appel's mental status exams.  As discussed above, however, the mood/affect section was the only category from Plaintiff's mental status exams that was not "unremarkable."  Moreover, Dr. Appel never indicated that he observed "uncontrollable crying" as Plaintiff contends.  Rather, as noted above, Dr. Appel indicated that Plaintiff was "*appropriately* tearful *at times*." Tr. 415, 431 (emphasis added).

why Dr. Appel's assessment "would indicate hospitalization or institutionalization." Nonetheless, it is evident that the ALJ primarily discounted the persuasiveness of Dr. Appel's opinions both because they were inconsistent with the bulk of the medical evidence of record (something Plaintiff does not appear to dispute) and unsupported by Dr. Appel's treatment notes. In other words, even assuming the ALJ's hospitalization statement was improper, it is obvious that her evaluation of Dr. Appel's opinions (and the ALJ's ultimate determination) would not change in light of all of the evidence she pointed to in support of her decision to find Dr. Appel's opinions unpersuasive.[7] And the evidence the ALJ pointed to undoubtedly qualifies as substantial evidence.

### 3.   Plaintiff's Physical Limitations

As noted above, in determining Plaintiff's physical limitations, the ALJ found that Plaintiff is capable of lifting/carrying 50 pounds occasionally and 25 pounds frequently, standing/walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday. In other words, the ALJ found that Plaintiff is capable of performing work at the "medium" exertional level. *See* 20 C.F.R. § 404.1567(c); SSR 83-10. In addition to limiting Plaintiff to work at the medium exertional level, the ALJ limited Plaintiff to "frequently climb[ing] ramps and stairs, balanc[ing], stoop[ing], kneel[ing], crouch[ing], and crawl[ing], and occasionally climb[ing] ladders, ropes and scaffolds" (the ALJ also included a non-physical limitation). Tr. 23.

Plaintiff contends that the ALJ erred in evaluating her physical limitations for two reasons: (1) the ALJ improperly discounted objective medical evidence from Dr. Mark Rogovin reflecting

---

[7] *Cf. Malloy v. Kijakazi*, No. CV 22-2133, 2024 WL 69139, at *11 (E.D. Pa. Jan. 5, 2024) ("Plaintiff also argues that the ALJ substituted her lay opinion for that of the medical experts when she stated that Dr. Friedman's opinions 'suggest the claimant should be institutionalized if she indeed had no ability to function.' I agree with Plaintiff that the ALJ's statement was inappropriate and lacking foundation. However, the isolated comment did not 'cross the line into the ALJ substituting [her] opinion for those of her doctors' requiring remand." (internal citation omitted)).

positive straight leg testing and reduced range of motion in Plaintiff's cervical spine, shoulder, hip, and knees; and (2) the ALJ improperly "declined to assess additional limitations because [Plaintiff] did not undergo a new MRI" (her most recent MRI was in 2008). [DE 16] at 17-18.

However, Plaintiff has failed to show that the ALJ's evaluation of Plaintiff's physical limitations is not supported by substantial evidence. With respect to Plaintiff's MRI argument, the ALJ did not decline to assess greater limitations due to Plaintiff not receiving a new MRI. Rather, the ALJ explained that notwithstanding what Plaintiff's 2008 MRI revealed – bulges at C3-C4 through C5-C6 and disc herniation at C5-C6 – Plaintiff was able to continue working until her Alleged Onset Date (roughly 12 years after the 2008 MRI). Tr. 27. Thus, the ALJ reasonably determined that "it is evident this impairment has not prevented work activity" and "[t]he fact that this impairment did not prevent [Plaintiff] from working throughout that period strongly suggests that it would not currently prevent work." Tr. 27. And significantly, the ALJ also found, pointing to specific medical evidence of record, that "[t]here is no evidence [Plaintiff's] physical condition has, in any way, deteriorated." Tr. 27. In other words, the ALJ did not decline to assess greater limitations merely because Plaintiff did not undergo a new MRI. Rather, the ALJ determined that Plaintiff was physically capable of working before the Alleged Onset Date and that the record was devoid of evidence showing that Plaintiff's physical condition deteriorated on or after the Alleged Onset Date.[8] Therefore, Plaintiff's MRI argument is unavailing.

---

[8] Notably, it was Plaintiff's burden to establish her RFC and to produce supporting evidence. *See Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) ("A claimant bears the burden of establishing his RFC." (citing *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019))); *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) ("A claimant bears the burden of proof for establishing the existence of a disability and must produce evidence in support of a claim, including at the RFC stage." (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3))).

Plaintiff's first argument – that the ALJ improperly discounted certain objective medical evidence from Dr. Rogovin – requires some further consideration, however.   By way of background, the ALJ recognized "that Dr. Rogovin's examination did indicate decreased ranges of motion to [Plaintiff's] cervical spine, shoulders, hips, knees, ankles, and toes. Straight leg raise testing was also positive." Tr. 28.  But the ALJ deemed such findings "unconvincing," stating that

> these types of findings are based primarily upon [Plaintiff's] subjective complaints regarding her pain and physical limitations. The objective findings referred to result directly from [Plaintiff's] reports of pain, for example a [plaintiff's] complaints of pain in performing range of motion exercises or general complaints of tenderness. Despite [Plaintiff's] subjective reports of pain, however, x-rays of [Plaintiff's] shoulders, ankles, and knees were all deemed normal. (Exhibits 11F and 12F). The inconsistency between [Plaintiff's] subjective complaints and the objective imaging reports renders her complaints less persuasive.

Tr. 28.

It is questionable whether it was proper for the ALJ to consider such findings unconvincing on the basis that they were based primarily on Plaintiff's subjective complaints.  But even if improper, the ALJ cited a significant amount of evidence to support her physical RFC determination.[9]  The plethora of evidence the ALJ pointed to undoubtedly qualifies as substantial evidence, and Plaintiff has failed to demonstrate harmful error – even assuming the ALJ erred in finding the results of Dr. Rogovin's straight leg testing and range of motion testing unconvincing.

Specifically, in support of her physical RFC determination, the ALJ pointed to the following evidence: (1) Plaintiff's report in July 2021 "that she has no physical problems"; (2) Dr.

---

[9] *Cf. Reeve v. Kijakazi*, No. 22-36018, 2023 WL 7411537, at *3 (9th Cir. Nov. 9, 2023) ("ALJ Ross's discounting of Dr. Liu's pinprick and range of motion testing based on Dr. Thompson's testimony that pinprick and range of motion tests are 'subjective findings' appears to run counter to the Administration's own regulations. . . . However, we have observed previously that even objective medical tests may be subject to manipulation. We need not resolve whether ALJ Ross erred in describing Dr. Liu's testing methods as subjective because, even if we exclude all of the improper and questionable reasons, the remaining reasons adequately support the decision to discount Dr. Liu's opinion." (internal citations omitted)).

Rogovin's statement that his May 2022 evaluation of Plaintiff revealed "no obvious clubbing, cyanosis, or edema" to Plaintiff's extremities; (3) "[e]xamination of [Plaintiff's] extremities and musculoskeletal system confirmed 'no other sign of joint deformity,' no 'obvious paravertebral spasm,' and no 'swelling, tenderness, increased heat, lesion, or other abnormality'"; (4) Plaintiff "exhibited full '5/5' strength throughout her upper and lower extremities and Dr. Rogovin observed the claimant was able to get 'up and down from the exam table independently without complaints' as well as ambulate 'with a steady, independent, unremarkable gait'"; (5) "x-rays of [Plaintiff's] shoulders, ankles, and knees were all deemed normal"; (6) in August 2022, Plaintiff "reported no muscle aches, cramps, weakness, joint swelling or warmth, arthritis, stiffness, gout, bone pain, neck pain, back pain, arthralgias/joint pain, decreased motion in arms/legs, or swelling in the extremities"; (7) no neurological symptoms or limitations were reported; (8) "examination of [Plaintiff's] musculoskeletal system, neurological system, and extremities [in August 2022] resulted in unremarkable findings";[10] (9) "unremarkable objective findings were also made upon examination" in September and October 2022; and (10) Dr. Steven Arkin's prior administrative medical findings, which the ALJ found to be persuasive.[11]  Tr. 27-28.

---

[10] In fact, the August 2022 examination of Plaintiff's musculoskeletal system that the ALJ pointed to revealed, *inter alia*, full range of motion in Plaintiff's cervical spine.  Tr. 507.

[11] Regarding Dr. Arkin, the ALJ explained:

> According to Dr. Steven Arkin, [Plaintiff] retains the ability to perform medium exertion level work (occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 pounds, standing and/or walking for a total of about 6 hours in an 8 hour workday, sitting for a total of about 6 hours in an 8 hour workday, and unlimited pushing and/or pulling other than as shown for lifting and/or carrying). Furthermore, he opined that [Plaintiff] had only minimal postural limitations with no manipulative, visual, communicative, or environmental restrictions. (Exhibit 6A, Pages 5-6). The undersigned finds Dr. Arkin's opinions to be highly persuasive as they are supported by and consistent with the totality of the evidence.

Tr. 28.

In light of all of the evidence the ALJ pointed to, the Court is hard-pressed to find that further consideration of Dr. Rogovin's straight leg raising and range of motion testing would change the ALJ's ultimate determination regarding Plaintiff's physical limitations.  Therefore, Plaintiff has failed to satisfy her burden of establishing harmful error.  *See Raper*, 89 F.4th at 1274 n.11 ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citation omitted)).

### 4.  ALJ's Subjective Symptom Analysis

Plaintiff has failed to demonstrate reversible error with respect to the ALJ's evaluation of Plaintiff's subjective complaints.  When a claimant attempts to prove that she is disabled by providing testimony regarding her pain or other symptoms, she must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Raper*, 89 F.4th at 1277 (quoting *Wilson*, 284 F.3d at 1225).  This standard applies to both complaints regarding subjective pain and complaints regarding other subjective conditions. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the objective medical evidence shows that a claimant's impairment "could reasonably be expected to produce" the pain or symptoms alleged by the claimant, "the ALJ must evaluate the intensity and persistence of the claimant's alleged pain and consider 'all of the available evidence' from both medical and nonmedical sources." *Harvey v. Soc. Sec. Admin., Comm'r*, No. 22-10281, 2022 WL 17175649, at *3 (11th Cir. Nov. 23, 2022) (citing 20 C.F.R. § 416.929(c)(1)); *see also* 20 C.F.R. § 404.1529(c)(1).

An ALJ considers the following factors when evaluating a claimant's statements regarding the intensity of her symptoms:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) the claimant's treatments other than medication; (6) any measures used to relieve pain; and (7) other factors concerning a claimant's functional limitations and restrictions based on pain or other symptoms.

*Raper*, 89 F.4th at 1277 (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)); *see also* 20 C.F.R. § 404.1529(c)(3)(i)-(vii).  "The ALJ must consider these factors in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." *Raper*, 89 F.4th at 1277 (citing 20 C.F.R. § 416.929(c)(4)); *see also* 20 C.F.R. § 404.1529(c)(4).  Nonetheless, an "ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole." *Raper*, 89 F.4th at 1277 (citing *Dyer*, 395 F.3d at 1210).

In order to discredit a claimant's subjective complaints, an ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Provided that an ALJ does so and that the ALJ's findings are supported by substantial evidence, courts will not disturb the ALJ's determination.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." (internal citations omitted)).

Here, the ALJ preliminarily made clear that she conducted her subjective symptom analysis in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p.  Tr. 23.  She also set forth the pain standard, provided an overview of Plaintiff's hearing testimony (regarding why Plaintiff alleges she cannot work), and indicated she took into account the 7 factors relevant to evaluating the intensity of a Plaintiff's symptoms (i.e., the 7 factors in § 404.1529(c)(3)).  *See* Tr. 23-24.

Ultimately, the ALJ explained that she was "not persuaded [Plaintiff] experiences symptoms of a severity and frequency as to preclude the modest level of work reflected in the above RFC determination."  Tr. 29.

The ALJ provided substantial evidence to support her decision to discount Plaintiff's subjective complaints.  As indicated in detail in Section 2 above, the ALJ found, *inter alia*, that: (1) the results of Dr. Appel's mental status examinations – which the ALJ reasonably and rationally concluded were generally unremarkable – were inconsistent with Plaintiff's subjective complaints; (2) Dr. Lewis's opinions (which were inconsistent with Plaintiff's complaints regarding the limiting effects of her symptoms) were persuasive; and (3) the psychological consultative examinations performed by Dr. Zaldivar and Dr. Black were generally supportive of the limitations the ALJ found to exist (and thus inconsistent with the extent of limitations alleged by Plaintiff). Additionally, as indicated in detail in Section 3 above, the ALJ likewise relied upon at least 10 pieces of evidence – including objective medical evidence, prior administrative medical findings, and Plaintiff's statement in July 2021 that she did not have any physical problems – in concluding that Plaintiff was not as physically limited as Plaintiff alleged.  Succinctly, the ALJ pointed to specific reasons for discounting Plaintiff's subjective complaints, and the range of evidence the ALJ relied upon in discounting Plaintiff's subjective complaints undoubtedly qualifies as substantial evidence.

Nevertheless, Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective complaints regarding her mental health symptoms for two reasons: (1) the ALJ's statement that Plaintiff was not persistent in mental health treatment is not supported by substantial evidence; and (2) the ALJ failed to consider side effects caused by Plaintiff's medications.

Relevant to Plaintiff's first contention of error, the ALJ stated: "Despite the claimant's difficulties, however, there is no indication the claimant obtained any sort of persistent mental health treatment for a significant period of time. This lack of treatment is contradictory to the claimant's allegations of disability." Tr. 24.  The extent to which this statement is supported by the record is somewhat unclear.  Plaintiff's Motion, as well as certain of Plaintiff's statements in the record, indicate that Plaintiff began seeing Dr. Tereo (for mental health treatment) in January 2021 (roughly 5 months after the Alleged Onset Date). *See* [DE 16] at 3; Tr. 90, 91.  However, the record contains a letter from Dr. Tereo indicating that Plaintiff was under his care as early as September 30, 2020 (just under 2 months after the Alleged Onset Date). *See* Tr. 345.  As to Plaintiff's frequency of treatment with Dr. Tereo, Plaintiff states in her motion that she treated with him weekly.  And Dr. Tereo did indicate in one letter that Plaintiff "will continue her weekly sessions." Tr. 346.  However, as indicated in Section 1 above, the record only contains 4 brief letters from Dr. Tereo.  It does not contain any treatment records from him.  Additionally, contrary to Plaintiff's Motion, it does not appear that Plaintiff did obtain consistent treatment with Dr. Tereo.  In fact, Plaintiff indicated in August 2021 that she had not seen Dr. Tereo for over 3 months (contrary to her contention that she met with him weekly). *See* Tr. 246-47.

Plaintiff also indicates that she had been treated by a therapist since August 2021 (1 year after the Alleged Onset Date) and that she would continue to treat with a therapist weekly.  [DE 16] at 19.  However, what the record indicates is that Plaintiff treated with her therapist 9 times over 6 months (not weekly). Tr. 347.  The therapist *recommended* that Plaintiff continue treatment weekly, Tr. 347, but there does not appear to be any indication in the record that Plaintiff did ever obtain weekly treatment (and certainly not consistently).  Plaintiff additionally notes that she treated with Dr. Appel between May 2022 and September 2022.  And the record does indicate that

Plaintiff treated with Dr. Appel monthly during those 5 months (as well as in March and April 2022).

Ultimately, it is less than clear whether the ALJ's persistent treatment statement is supported. What is clear is that the ALJ should have provided further context for her statement. Nonetheless, the persistent treatment statement was only one of several reasons the ALJ offered for discounting Plaintiff's symptoms. And given that the ALJ's persistent treatment statement is not clearly wrong, the abundance of other reasons the ALJ offered provide substantial evidence for the ALJ's credibility determination.

Plaintiff's second subjective symptom argument – regarding the ALJ's consideration or lack thereof of medication side effects – does not fare any better. According to Plaintiff, although she testified that she experienced depression and constipation as medication side effects, "[t]he ALJ played doctor and remarked that depression was a condition, not a side effect, and would not allow Ms. Guaglione to further discuss her depression as a side effect." [DE 16] at 20. Additionally, Plaintiff argues that the ALJ did not consider her constipation at all. Relevant to Plaintiff's side effect argument, the following exchange occurred between the ALJ and Plaintiff at the hearing:

> Q Do you take your medications as prescribed?
> A Yes, Your Honor.
> Q Do you have any side effects?
> A I do.
> Q What are they?
> A Depression. Constipation.
> Q Depression as a side effect of which medication?
> A I don't know offhand. I don't know.
> Q I think that's your condition, not side effect. You're taking medication to treat depression.
> A Yeah. Like I said, I think that -- one of my friends, or two of them had told me that this is bad to be on --
> Q Okay. So one of your friends --
> A It's not --

Q One of your friends?
A Yeah.
Q Is this a medical doctor?
A Not a doctor. No.
Q Okay, so that's hearsay. We're not going to talk about that.
A Yeah.
Q Are you having any side effects from the medications you're taking?
A No. Uh-uh. Just the constipation.
Q Has any other treatment besides medication been recommended for your problems?
A No.
Q Are you taking anything for the constipation?
A Yes.
Q What?
A Miralax.
Q Does it help?
A Yeah. Not right away. Yeah. Not right away. And Colace, because it's just -- you know, obviously too hard, so.

Tr. 48-49.

As the foregoing exchange shows, the ALJ did not act improperly in addressing Plaintiff's depression. And as Defendant argues, the ALJ made clear in her decision that she considered Plaintiff's depression. Thus, even if the ALJ had not questioned Plaintiff's initial characterization of depression as a side effect, the Court does not see how the ALJ's decision would have been any different. As to Plaintiff's side effect of constipation, it is true that the ALJ did not expressly mention the side effect in her written decision. However, as mentioned above, an "ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole." *Raper*, 89 F.4th at 1277 (citing *Dyer*, 395 F.3d at 1210). And here, it is evident that the ALJ's decision is not a broad rejection and that the ALJ considered Plaintiff's medical condition as a whole. Moreover, the ALJ's decision notes that she considered the relevant factors (including medication side effects). *See* Tr. 23-24. Also, Plaintiff has not provided any indication regarding how her constipation affects her RFC.

For the foregoing reasons, the ALJ's decision, including her subjective symptom evaluation, is supported by substantial evidence.

## **CONCLUSION**

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 16] is **DENIED** and Defendant's Motion [DE 19] is **GRANTED**.  The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 29th day of March 2024.

Jared M. Strauss
United States Magistrate Judge